[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR CONTEMPT AND ORDER
This case began as a complaint filed on November 23, 1999, by the above cited plaintiff seeking joint legal custody of and visitation with a minor child. A hearing on that complaint was held on December 16, 1999, at which time the parties entered into a stipulated written agreement in which the mother affirmed and the father acknowledged patermty of the minor child. Additionally, a visitation schedule and child support/daycare assistance in the amount of $150 per week were agreed to and made orders of the court. (Maczak, J.)
On February 16, 2000, the defendant, Sandra Cherko, filed a motion for CONTEMPT and a motion for ORDER. The motion for contempt alleges that the plaintiff failed and/or refused to pay the child support as ordered by the court on December 16, 1999. In the motion for order, the defendant argues that the plaintiff owes approximately $12, 000 for three years past due child support and seeks a finding of arrearage and an order of payment on the arrearage.
A hearing was held on the motions for contempt and order on May 19, 2000. Both parties were present with counsel. Both parties testified before the court and several exhibits were entered into evidence. The plaintiff filed financial affidavits for the years 1997 and 1999 and the defendant filed a financial affidavit for the year 1999. The court took judicial notice of the prior proceedings contained in the court file. CT Page 8912
After a careful consideration of the evidence produced, and after assessing the credibility of the witnesses, the court finds the following facts to have been proven.
Sandro Figueiredo and Sandra Cherko are the unmarried parents of Dilan Cherko, born July 19, 1996. After the birth of the child, the parties, who had separated, entered into an agreement which provided that Mr. Figueiredo would pay Ms. Cherko $300 per month for the support of the child. In return, Cherko would permit Figueiredo to visit with the child. The court finds no evidence of coercion, duress or fraud in reaching this agreement.
The defendant's claim that she agreed to the amount of child support proposed by the plaintiff because of duress is not credible. This was a contractual agreement in which each party agreed to do something that neither was legally obligated to do and each party received a benefit to which neither was legally entitled. Figueiredo agreed to pay child support to Cherko without acknowledging patermty or having his patermty legally established, and Cherko agreed to allow Figueiredo to visit with the child.
The defendant always had the legal right to bring a patermty action against the plaintiff and, if patermty was established, seek additional child support. She chose not to do so. Her argument that she was afraid that if she did so Figueiredo might be deported resulting in her not getting any child support is unpersuasive. This possibility may have been of concern to the defendant, but there is no credible evidence that the plaintiff ever directly or indirectly raised this subject with the defendant as a means of forcing her or even encouraging her to agree to the proposed amount of child support. The evidence is clear and undisputed that Figueiredo payed Cherko the agreed upon a sum of $300 each and every month from January 1997 until and including December 1999.
Based upon the evidence presented, this court finds that the child support agreement entered into by the parties three years ago was both fair and reasonable under the particular facts and circumstances presented. The court further finds that the plaintiff has fully complied with that agreement.
The financial affidavits submitted by Figueiredo indicate that in 1997 his net weekly income was $311 and in 1999 his net weekly income was $376. Copies of Figueiredo's Federal and State Income Tax returns show gross income of $20,759 in 1997, $19,401 for 1998, and $21,113 for 1999. (Exhibit 2) There is no credible evidence regarding Cherko's net income during the years 1997 and 1998. Ms. Cherko testified that she was CT Page 8913 employed in 1997 and 1998 but she has not provided any credible evidence regarding the amount of her income for those years. The court cannot surmise the amount of Ms. Cherko's income from 1997 through 1998. The only documentary evidence concerning her income is in the form of financial affidavits filed in December 1999 and May 2000 which show a net weekly income of $366 for 1999-2000.
During the course of the hearing the defendant introduced some of the plaintiffs 1999 bank records showing deposits in excess of the income reported on his Federal Income Tax Return. The defendant argues that since the plaintiff offered no testimony concerning the source of these deposits the court should infer that the funds fall within the definition of gross income in the Child Support Guidelines. The fact of the matter is that Figueiredo was never specifically asked to explain the source or disposition of this money during his testimony before this court. The defendant introduced the documents into evidence but did not bother examining nor cross examine the plaintiff regarding the specific funds in question.
Apparently the defendant does not know the source of the deposits, and since Mr. Figueiredo was never asked to explain the source of the deposits, the court is left with many questions but few answers as to the source and disposition of the questioned deposits. It is the function of the parties to provide the court with evidence from which findings of fact can be made. The defendant suggests that the court infer the existence of certain facts regarding these funds. The court finds that there is insufficient credible, persuasive evidence from which to do so. It is not the proper function of the court to guess.
The court finds that, for the purpose of computing child support under the child support guidelines, the defendant has not proven by a fair preponderance of the evidence that the plaintiffs actual income was greater than that reported to the court, the United States, or the State of Connecticut. (Financial affidavits and Exhibit 2)
MOTION FOR CONTEMPT
As of December 13, 1999, the plaintiffs child support obligation, pursuant to the agreement of the parties, was $300 per month. The plaintiff paid the defendant $300 for the month of December on November 26, 1999. (Exhibit 1) On December 13, 1999, the parties agreed to increase the plaintiffs child support/day care contribution to $150 per week. On December 16, 1999, the agreement was accepted by and made an order of the court. On February 16, 2000, the defendant filed a motion seeking to have the plaintiff held in contempt alleging that he has not payed the entire amount of $150 per week as ordered. CT Page 8914
The plaintiff acknowledges that he did not pay the defendant any additional money for the month of December. He mistakenly assumed that the $300 he had already payed to the defendant for December 1999 would cover the two last weeks of the month. He also made a common mistake of assuming that there are only four weeks in each month and that he therefore believed that he was required to pay the defendant $600 per month. The evidence reflects that the plaintiff payed the defendant $600 for each of the months of January and February, $925 in March, and $650 for each of the months of April and May 2000. (Exhibit 1) The court finds the testimony of the plaintiff credible. His failure was not a wilful violation of the order of the court. The court finds that the plaintiff is not in contempt.
The court also finds that for the 24-week period between December 16, 1999 and April 1, 2000, the defendant was entitled to $3600 in child support/daycare contribution from the plaintiff. As of the date of trial the plaintiff had paid her $3425 leaving him with an arrearage of $175 as of that date. The plaintiff is ordered to pay to the defendant the arrearage of $175 before September 1, 2000.
MOTION FOR ORDER
The defendant claims that she was entitled to a greater amount of child support than she agreed to, and that she could have brought a patermty action against the plaintiff and then sought an increase in child support through the court. She chose not to do so. The defendant apparently now regrets her decision and asks this court to retroactively modify of the voluntary child support agreement that she entered into with the plaintiff three years ago.
It is important to note that this is not, nor has it ever been, a patermty action brought under the provisions of § 46b-160 of the General Statutes. Neither party has ever filed a patermty action involving this child. It is also not a proceeding properly brought under the provisions of § 46b-172(a)(1).[1] The defendant argues that the "in lieu of' language contained in § 46b-172(a)(1) authorizes the court to impose a retroactive child support obligation upon a putative father in the absence of a patermty hearing and finding under §46b-160 if the putative father executes a written acknowledgment of patermty. The defendant is technically correct; however, the statute also requires that the parties satisfy several additional specific conditions before a written acknowledgment of patermty becomes legally binding, with the same force and effect as a judgement of the court. That was not done in this case. CT Page 8915
Plaintiffs' acknowledgment of patermty is a simple declaration contained within a stipulated agreement concerning visitation and child support. The stipulation does not contain, and is not accompanied by, the required attested waiver of the right to a blood test and the right to a trial, nor was the putative father's acknowledgment of patermty and the mother's affirmation of patermty sworn to by either party as required under the statute. This is not an issue of form over substance. The requirements of notice and waiver are substantive matter of due process.
It is to their credit that the parties, upon their own initiative, were able to agree upon a reasonable amount of child support for the first three years of the child's life. There is nothing in the law that prohibits the unmarried parents of an illegitimate child from entering into a fair and mutually acceptable agreement involving the support of the child without first obtaining the imprimatur of a judge or magistrate. While such parties have the right to seek a support order from the court, the law does not require such a course of action when the parties are able to agree between themselves. That is exactly what the Mr. Figueiredo and Ms. Cherko did in this case.
This is not a case in which the father of the child refused to pay reasonable child support since the birth of the child. The defendant was apparently satisfied with the agreement that she entered into with the plaintiff regarding child support until the plaintiff sought additional visitation rights with the minor child. Under the circumstances, even if the defendant had proven that child support which she received from the plaintiff was less than that to which she might have been entitled, the court finds that ordering the plaintiff to pay the defendant the additional amount of child support that she now claims she could have sought from the plaintiff would be unfair and inequitable. Having voluntarily entered into this child support agreement, and having accepted and benefitted [benefited] from receiving $300 a month for three years from the plaintiff, the defendant is estopped from seeking a retroactive modification of the child support agreement.
The defendant has not proven that she is entitled to any additional child support beyond that which she agreed to, and received, from January 1997 through December 16, 1999. Accordingly, the motion for Order is denied.
 ______________________, J. Terence A. Sullivan Superior Court Judge